IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| David R. Alexander, | ) | C/A No.: 1:12-2615-GRA-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Carolyn W. Colvin, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The two issues before the court are whether the Commissioner's findings of fact are supported by substantial evidence and whether she applied the proper legal standards. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further proceedings as set forth herein.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Fed. R. Civ. P. 25(d), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the defendant in this lawsuit.

I.    Relevant Background

    A.    Procedural History

On March 9, 2010, Plaintiff filed applications for DIB and SSI in which he alleged his disability began on May 20, 2008.  Tr. at 142–45, 149–56.  His applications were denied initially and upon reconsideration.  Tr. at 99–100, 104, 106.  On October 4, 2011, Plaintiff had a hearing before Administrative Law Judge ("ALJ") Gregory M. Wilson.  Tr. at 71–98 (Hr'g Tr.).  At the hearing, Plaintiff requested that his disability onset date be amended to January 10, 2010.  Tr. at 19, 74.  The ALJ issued an unfavorable decision on November 18, 2011, finding that Plaintiff was not disabled within the meaning of the Act.  Tr. at 17–38.  Subsequently, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  Tr. at 1–3.  Thereafter, Plaintiff brought this action seeking judicial review of the Commissioner's decision in a complaint filed on September 12, 2012. [Entry #1].

    B.    Plaintiff's Background and Medical History

        1.    Background

Plaintiff was 45 years old at the time of the hearing.  Tr. at 76.  He completed the twelfth grade.  *Id.*  His past relevant work ("PRW") was as a landscape specialist and a janitor.  Tr. at 95–96.  He alleges he has been unable to work since January 10, 2010.  Tr. at 19.

2.    Medical History

On August 17, 2009, Plaintiff presented to his primary care physician, Patricia A. Landry, M.D., complaining of a 20-year history of back pain that had been increasing in intensity over the prior several months.  Tr. at 300.  He stated that his pain had been of moderate severity with radiation down the right leg.  *Id.*  He reported difficulty sleeping and felt that his chronic sleep deprivation may have precipitated fibromyalgia.  *Id.*  It was noted that Plaintiff was unemployed and considering seeking disability.  *Id.*  On examination, Plaintiff's condition was unremarkable and a straight leg raise test was negative.  *Id.*  Dr. Landry diagnosed acute chronic low back pain, hyperlipidemia, and sleep apnea; ordered an MRI; and prescribed pain medications.  *Id.*  An MRI of Plaintiff's lumbar spine on August 20, 2009, demonstrated (1) moderate spinal stenosis with advanced facet arthropathy and mild bilateral neural foraminal stenosis at L4–5 and (2) mild neural foraminal stenosis at L5–S1.  Tr. at 279–80.

Plaintiff followed up with Dr. Landry on September 17, 2009.  Tr. at 299.  Dr. Landry diagnosed back pain, facet arthropathy, and hyperlipidemia, and noted that Plaintiff was adamant about not wanting back surgery.  *Id.*

Plaintiff saw Dr. Landry again on October 16, 2009, and reported that the symptoms related to his chronic back pain were exacerbated over the prior two weeks.  Tr. at 296.  Dr. Landry prescribed Prednisone and Neurontin and increased Plaintiff's Lortab.  *Id.*  On November 17, 2009, Plaintiff informed Dr. Landry that he was doing well on Neurontin and Lortab and that his pain was manageable.  Tr. at 295.

Plaintiff returned to Dr. Landry on February 18, 2010, for follow-up regarding his back pain. Tr. at 294. Dr. Landry noted that Plaintiff was concerned regarding some generalized achiness and had "been entertaining the possibility of fibromyalgia." *Id.* Plaintiff reported having a difficult time with prolonged activity because it tended to exacerbate his back pain. *Id.* Dr. Landry diagnosed chronic back pain, hyperlipidemia, and possible fibromyalgia and prescribed a trial of Savella for fibromyalgia. *Id.*

Plaintiff saw Dr. Landry again on March 19, 2010, for follow-up evaluation of underlying medical conditions including fibromyalgia, hyperlipidemia, and chronic back pain. Tr. at 341. Plaintiff reported that Savella had resulted in significant improvement in his muscle aches, but requested handicapped parking. *Id.* Dr. Landry checked Plaintiff's weight, pulse, blood pressure, lungs, heart, and abdomen, and noted that his extremities were without edema. *Id.* Dr. Landry assessed Plaintiff with improved fibromyalgia, hyperlipidemia, and chronic back pain. *Id.*

On May 3, 2010, Plaintiff presented to Dr. Landry and reported doing well on Savella. Tr. at 340. Dr. Landry checked Plaintiff's vital signs, lungs, heart, and abdomen, and diagnosed fibromyalgia and hyperlipidemia. *Id.*

On May 20, 2010, Stuart M. Barnes, M.D., completed a consultative orthopedic examination of Plaintiff. Tr. at 316. Plaintiff reported that he hurt his back in 1992 while working in a textile mill and that his back had continued to hurt since then. *Id.* He stated that his pain fluctuated between and five and nine on a 10-point scale. *Id.* He reported that taking Savella for his fibromyalgia definitely helped. *Id.* He stated that he had weaned his smoking from two packs per day to one pack per day. Tr. at 317. On

4

examination, Plaintiff appeared slightly depressed, but had normal communication skills and was able to complete all mental exercises. *Id.* It was noted that Plaintiff had a noticeable right-sided limp, but did not use a corrective device. *Id.* He had mild bilateral crepitus in both shoulders, but a normal range of motion in his shoulders, elbows, and wrists and good strength in his upper extremities. Tr. at 318. He exhibited some resistance to range of motion exercises in his lower extremities due to anticipation of pain; however, his range of motion appeared normal in his hips, knees, and ankles. *Id.* Plaintiff's straight leg raise was positive and he had limited flexion in his lumbar spine. *Id.* Dr. Barnes diagnosed chronic back pain with possible right radicular signs at L5–S1, obstructive sleep apnea, and a history of chest pain. *Id.* He stated that Plaintiff appeared to be limited in mobility, bending, stooping, and lifting to a significant degree. *Id.*

State-agency consultant Jeffrey Wheeler, M.D., completed a physical residual functional capacity ("RFC") assessment of Plaintiff on June 10, 2010. Tr. at 323–29. Dr. Wheeler diagnosed Plaintiff with degenerative disc disease of the lumbar spine, lumbar spinal stenosis, and a history of chest pain. Tr. at 323. He opined that Plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds; stand and/or walk at least two hours in an eight-hour workday; sit about six hours in an eight-hour workday; and occasionally climb, balance, stoop, kneel, crouch, and crawl. Tr. at 324–26.

On July 8, 2010, Plaintiff sought treatment for depression and anxiety with Behavioral Health Services. Tr. at 336–37. He reported trust issues, emotional distress from his relationships, and anxiety while in public. Tr. at 337. He was diagnosed with a

depressive disorder, panic disorder with agoraphobia, and a partner relational problem. Tr. at 336.

Plaintiff returned to Dr. Landry on June 7, 2010, for follow-up evaluation of hyperlipidemia and underlying fibromyalgia. Tr. at 339. He reported doing well on Savella. *Id.* Dr. Landry checked Plaintiff's lungs, heart, and abdomen. *Id.* The doctor diagnosed fibromyalgia and markedly improved hyperlipidemia. *Id.*

On July 12, 2010, Plaintiff reported to Dr. Landry that he did not want to leave his house, and was having anhedonia and fatigue. Tr. at 338. Dr. Landry resumed Plaintiff on Zoloft, continued him on Savella and Lortab, and noted diagnoses of fibromyalgia, chronic back pain, and a history of concomitant depression. *Id.*

Plaintiff presented to Dr. Landry on August 12, 2010, for follow up of his chronic back pain, hyperlipidemia, and concomitant depression. Tr. at 399. He reported that he had done well on Zoloft and was well pleased with it. *Id.* Plaintiff's examination was unremarkable and Dr. Landry diagnosed him with back pain, hyperlipidemia, and improved mood disorder. *Id.*

David G. Cannon, Ph.D., completed a psychological evaluation of Plaintiff on September 30, 2010. Tr. at 361. Plaintiff reported experiencing constant anxiety and constant depression characterized by social avoidance, loss of motivation, and occasional suicidal ideation. *Id.* Plaintiff stated that he was experiencing a panic attack during the evaluation; however, Dr. Cannon indicated that there were no major symptoms present and that Plaintiff did not appear to be in marked distress. Tr. at 362. Dr. Cannon diagnosed adjustment disorder with mixed anxiety and depressed mood and opined that

Plaintiff should be able to manage funds effectively, carry out daily self-care activities independently, and maintain sufficient concentration and pace to complete tasks in a timely fashion in a work environment. *Id.*

On October 5, 2010, Plaintiff saw Dr. Landry and complained of back pain and stiffness, but denied joint pain, joint swelling, muscle cramps, muscle weakness, and arthritis. Tr. at 396. Plaintiff also denied depression, anxiety, memory loss, mental disturbance, suicidal ideation, hallucinations, and paranoia. *Id.* Dr. Landry diagnosed improved hyperlipidemia, improved mood disorder, and chronic back pain that waxed and waned. *Id.*

State-agency consultant Maryanne Bongiovani, Ph.D., completed a psychiatric review technique ("PRT") of Plaintiff on November 3, 2010. Tr. at 364. Dr. Bongiovani opined that Plaintiff had an adjustment disorder with depressed and anxious mood. Tr. at 367, 369. She further opined that Plaintiff had no restrictions in activities of daily living ("ADLs"); mild restrictions in maintaining social functioning and maintaining concentration, persistence, or pace; and no episodes of decompensation. Tr. at 374.

Plaintiff returned to Dr. Landry on January 13, 2011, after slipping on ice and injuring his left leg. Tr. at 389. He reported that the injury was not significant and was improving. *Id.* Plaintiff walked with a cane and exhibited mild tenderness over the prepatellar bursa. Tr. at 390. Dr. Landry again noted that Plaintiff's low back pain waxed and waned. *Id.*

On April 21, 2011, Plaintiff presented to Dr. Landry for a check of his underlying medical conditions and stated that he had been noticing warm flushes that he thought may

be related to one of his medications.  Tr. at 380–81.  Plaintiff complained of back pain and stiffness, but denied joint pain, joint swelling, muscle cramps, muscle weakness, and arthritis.  Tr. at 382.  He had an antalgic gait, but walked without a cane.  Tr. at 383.  Dr. Landry assessed Plaintiff with hyperglycemia, hyperlipidemia, low back pain, mood disorder, and allergic rhinitis.  Tr. at 383.

On August 5, 2011, Dennis Johnson, L.P.C., completed a clinical assessment in which he opined that Plaintiff had major depressive disorder, pain disorder with agoraphobia, generalized anxiety disorder, and nicotine dependence.  Tr. at 420.  Mr. Johnson further opined that Plaintiff was unable to elevate his depressed mood and loss of interest and pleasure; and was unable to control his physical symptoms of extreme anxiety, fear, and discomfort.  Tr. at 421.

On August 25, 2011, Dr. Landry completed a medical source statement related to Plaintiff's physical abilities.  Tr. at 453.  She opined that Plaintiff could occasionally and frequently lift and/or carry 10 pounds; stand/walk two hours in an eight-hour workday, but only for a half hour without interruption; sit for six hours in an eight-hour workday, but only for one hour without interruption; rarely climb, balance, and stoop; occasionally kneel and crawl; occasionally reach, handle, feel, push, and pull.  Tr. at 453–55.  She also opined that Plaintiff's back pain necessitated frequent changes in position and stated that Plaintiff's medications could affect his ability to concentrate.  Tr. at 454, 456.  Dr. Landry also completed a questionnaire reporting that Plaintiff was not capable of full-time work, even at a sedentary level.  Tr. at 457.  Dr. Landry stated that her opinion was supported by an MRI of the lumbar spine that demonstrated "facet arthropathy and spinal

stenosis, foraminal stenosis, worse on the right side." *Id.* Lastly, Dr. Landry completed a questionnaire regarding Plaintiff's pain in which she reported that Plaintiff's pain was present to such an extent as to be distracting to adequate performance of daily activities or work. Tr. at 458.

Mr. Johnson completed a PRT form regarding Plaintiff on September 26, 2011. Tr. at 460. He opined that Plaintiff had a mood disturbance disorder, anxiety disorder, and nicotine dependence. Tr. at 463, 465, 468. Mr. Johnson further opined that Plaintiff had moderate limitation in ADLs; marked limitations in maintaining social functioning and maintaining concentration, persistence, or pace; and no episodes of decompensation. Tr. at 470. Mr. Johnson also completed a medical source statement in which he opined that Plaintiff could never deal with the public, use judgment, interact with supervisors, or deal with work stress; and could rarely function independently, maintain attention/concentration, follow simple job instructions, or demonstrate reliability. Tr. at 475–76.

C.     The Administrative Proceedings

1.     The Administrative Hearing

a.     Plaintiff's Testimony

At the hearing on October 4, 2011, Plaintiff testified that he last worked in May 2008, when he was laid off. Tr. at 76. He said he collected unemployment benefits and, in doing so, represented to the State of South Carolina that he was capable of working. Tr. at 76–77. He stated that he originally hurt his back in 1993 and had injections in his back in 2004 or 2005. Tr. at 76. He said that his back started to cause him problems

9

again in May 2009 after he moved some furniture, but that he did not go to the doctor until August 2009.  Tr. at 77.

Plaintiff testified that he had back pain from the middle of his back to his tail bone and described a pain level of six to eight out of 10.  Tr. at 78–79.  He also stated that he had pain in his right hip and both legs.  Tr. at 79.  He stated that his fibromyalgia caused muscle spasms throughout his body, but mainly in his shoulders and legs.  Tr. at 80.  He said he could sit for 30 minutes at a time and stand for less than 15 minutes.  *Id.*  He estimated he could walk 100 yards before he had to stop and rest.  *Id.*  He stated that he used a cane, but acknowledged that no doctor had prescribed the cane.  *Id.*  He said that his weight affected his ability to walk and caused aches and pains in his right knee.  Tr. at 93.  He reported being depressed and having panic attacks twice per week.  Tr. at 81.  He said that he could not deal with the public or with problems, lost sleep, and was not interested in anything.  Tr. at 82.

Plaintiff stated that he lived with his mother and cooked barbeque chicken or pork chops once a week, helped to fold clothes, vacuumed twice a week, took out the trash, and dusted.  Tr. at 76, 83–84.  He said he spent time with his family about once a week and grocery shopped every two weeks.  Tr. at 85.  He reported going on a family vacation to Tennessee in October 2010.  *Id.*  He stated that he read magazines about outdoor sports and went out to dinner with his daughters twice per month.  Tr. at 86.  He said he spent his days reading, watching television, or sitting outside on the porch.  Tr. at 92.

b.    Vocational Expert Testimony

Vocational Expert ("VE") Benson Hecker reviewed the record and testified at the hearing.  Tr. at 94.  The VE categorized Plaintiff's PRW as a landscape specialist as unskilled, medium or heavy work and as a janitor as unskilled, medium or heavy work. Tr. at 95–96.  The ALJ described a hypothetical individual of Plaintiff's vocational profile who could occasionally lift 20 pounds; frequently lift 10 pounds; stand two hours in an eight-hour day; walk two hours in an eight-hour day; sit six hours in an eight-hour day; never climb ladders, ropes, or scaffolds; occasionally climb, balance, stoop, kneel, crouch, or crawl; not be exposed to concentrated hazards; frequently reach overhead; and occasionally interact with the public.  Tr. at 96.  The VE testified that the hypothetical individual could not perform Plaintiff's PRW.  *Id.*  The ALJ asked whether there were any other jobs in the region or national economy that the hypothetical person could perform.  *Id.*  The VE identified the jobs of packer, assembly press operator, and bench assembler.  *Id.*  The ALJ then modified the hypothetical to reflect that the individual would miss work at various times and the frequency and duration of the absences would be in the sole discretion of the individual.  Tr. at 97.  The VE stated that the absences would preclude work.  *Id.*

2.    The ALJ's Findings

In his decision dated November 18, 2011, the ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

2.    The claimant has not engaged in substantial gainful activity since May 20, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3.    The claimant has the following severe impairments: obesity, degenerative joint disease in right knee and bilateral shoulders, degenerative disc disease in back, and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b).  I specifically find the claimant can lift or carry 20 pounds occasionally and 10 pounds frequently and he can stand for 2 hours out of an 8-hour workday, walk 2 hours out of an 8-hour workday and sit 6 hours out of an 8-hour workday.  In addition, I find the claimant can never climb a rope, ladder or scaffold, but he can occasionally climb, balance, stoop, kneel, crouch or crawl.   The claimant should avoid concentrated exposure to hazards.  I also find that he can frequently reach overhead.  Finally, I find he needs to have only occasional contact with the public.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.    The claimant was born on September 24, 1966 and was 41 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, 416.969(a)).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from May 20, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. at 17–38.

II.    Discussion

Plaintiff alleges the Commissioner erred for the following reasons:

12

1)      the ALJ erred in discounting the opinion of Plaintiff's treating physician;

2)      the ALJ incorrectly evaluated Plaintiff's allegations of chronic pain;

3)      the ALJ erred by requiring objective medical evidence of the severity of Plaintiff's pain;

4)      the ALJ erred in exaggerating Plaintiff's ADLs in his RFC analysis;

5)      the ALJ erred in failing to find that Plaintiff's fibromyalgia was a severe impairments; and

6)      the ALJ failed presented an incomplete hypothetical to the VE.

The Commissioner counters that substantial evidence supports the ALJ's findings and that the ALJ committed no legal error in his decision.

A.      Legal Framework

        1.      The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability."  42 U.S.C. § 423(a).  Section 423(d)(1)(A) defines disability as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions.  *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability

claims).  An examiner must consider the following:  (1) whether the claimant is engaged in substantial gainful activity; (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW;[3] and (5) whether the impairment prevents him from doing substantial gainful employment.  *See* 20 C.F.R. §§ 404.1520, 416.920.  These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work.  *See* 20 C.F.R. Subpart P, § 404.1520(a), (b); § 416.920(a), (b); Social Security

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity.  20 C.F.R. § 404.1525.  If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  To meet or equal one of these Listings, the claimant must establish that her impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria."  20 C.F.R. §§ 404.1526, 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[3] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520(h), 416.920(h).

Ruling ("SSR") 82–62 (1982).   The claimant bears the burden of establishing her inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW.  *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).  If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work.  *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.     The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [] made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence."  *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v.*

*Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence.  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational.  *See Vitek*, 438 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision."  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.      Analysis

1.      Treating Physician

Plaintiff argues that the ALJ failed to give sufficient weight to the opinions of his treating physician, Dr. Landry.  [Entry #12 at 9–18].  The Commissioner argues the ALJ reasonably adopted some of the limitations imposed by Dr. Landry and discredited others.  [Entry #13 at 10–12].

If a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, it will be given controlling weight.  SSR 96-2p; *see also* 20 C.F.R. § 404.1527(c)(2) (providing treating source's opinion will be given controlling weight if well-supported by medically-acceptable clinical and laboratory diagnostic techniques and inconsistent with other substantial evidence in the

16

record); *see also Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996) (finding a physician's opinion should be accorded "significantly less weight" if it is not supported by the clinical evidence or if it is inconsistent with other substantial evidence). The Commissioner typically accords greater weight to the opinion of a claimant's treating medical sources because such sources are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. *See* 20 C.F.R. § 404.1527(c)(2). However, "the rule does not require that the testimony be given controlling weight." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (per curiam). Rather, "[c]ourts evaluate and weigh medical opinions pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson*, 434 F.3d at 654. The ALJ has the discretion to give less weight to the opinion of a treating physician when there is "persuasive contrary evidence." *Mastro v. Apfel*, 270 F.3d, 171, 176 (4th Cir. 2001). In undertaking review of the ALJ's treatment of a claimant's treating sources, the court focuses its review on whether the ALJ's opinion is supported by substantial evidence, because its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589.

On August 25, 2011, Dr. Landry completed a medical source statement related to Plaintiff's physical abilities. Tr. at 453. She opined that Plaintiff could occasionally and frequently lift and/or carry 10 pounds; stand/walk two hours in an eight-hour workday,

17

but only for a half hour without interruption; sit for six hours in an eight-hour workday, but only for one hour without interruption; rarely climb, balance, and stoop; occasionally kneel and crawl; occasionally reach, handle, feel, push, and pull. Tr. at 453–55. She also opined that Plaintiff's back pain necessitated frequent changes in position and stated that Plaintiff's medications could affect his ability to concentrate. Tr. at 454, 456. Dr. Landry also completed a questionnaire reporting that Plaintiff was not capable of full-time work, even at a sedentary level. Tr. at 457. Dr. Landry stated that her opinion was supported by an MRI of the lumbar spine that demonstrated "facet arthropathy and spinal stenosis, foraminal stenosis, worse on the right side." *Id.* Lastly, Dr. Landry completed a questionnaire regarding Plaintiff's pain in which she reported that Plaintiff's pain was present to such an extent as to be distracting to adequate performance of daily activities or work. Tr. at 458.

The ALJ accorded limited weight to Dr. Landry's opinions. Tr. at 32. He found that Dr. Landry's assessment of Plaintiff's lifting, standing, walking, sitting, and postural limitations were in accordance with the evidence. *Id.* However, the ALJ discounted the remainder of Dr. Landry's opinions. Tr. at 32–33. In doing so, the ALJ noted that Dr. Landry's description of the severity of Plaintiff's pain was inconsistent with the doctor's treatment note indicating that the pain waxes and wanes. Tr. at 32. The ALJ also indicated that Dr. Landry's notes did not document regular musculoskeletal examinations or a finding of 11 of 18 tender points to establish fibromyalgia, but did include a negative straight leg raise test. *Id.* The ALJ stated that the findings of the 2009 MRI were not as severe as one would expect for Plaintiff's reported limitations. Tr. at 33. The ALJ found

that Plaintiff's ADLs, performance of mental tasks during a consultative evaluation, and ability to concentrate during the hearing were all inconsistent with the severity of pain reported by Dr. Landry. *Id.*

Plaintiff argues that although the ALJ stated that he agreed with Dr. Landry's assessment of Plaintiff's physical limitations, he did not include those limitations in his finding of Plaintiff's residual functional capacity ("RFC"). [Entry #12 at 12]. For example, the ALJ found that Plaintiff could carry 20 pounds occasionally, but Dr. Landry stated that Plaintiff could lift only 10 pounds frequently and occasionally.[4] Tr. at 24, 453. The ALJ found that Plaintiff could occasionally climb, balance, and stoop, while Dr. Landry opined that Plaintiff could rarely climb, balance, and stoop. Tr. at 24, 454. Although Dr. Landry opined that Plaintiff needed to frequently change position to achieve a level of comfort, the ALJ included no such provision in the RFC. *Id.* Finally, the ALJ found that Plaintiff could frequently reach overhead, but Dr. Landry stated that Plaintiff was limited to occasional reaching, handling, and feeling. Tr. at 24, 455. Plaintiff contends that the ALJ erred in failing to explain why he did not adopt all of the limitations assessed by Dr. Landry despite his statement to the contrary. [Entry #12 at 12–13].

The Commissioner contends that the ALJ explained that the limitations assessed by Dr. Landry that he did not incorporate into the RFC were not consistent with and not supported by record evidence. [Entry #13 at 11]. The Commissioner also asserts that in

---

[4] This difference resulted in Plaintiff's RFC providing that he could perform light work as opposed to sedentary work. *See* 20 C.F.R. §§ 404.1567, 416.967.

finding that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, the ALJ acknowledged that Dr. Landry's opinion that Plaintiff could not lift more than 10 pounds occasionally was not supported by her treatment notes.  *Id.*   Despite the Commissioner's contentions, the ALJ does not explicitly state that any of the physical limitations assessed by Dr. Landry were not supported by the record evidence.  The reasons provided by the ALJ for discounting Dr. Landry's opinions appear to deal with the doctor's opinions regarding the severity and effect of Plaintiff's pain and not with her opinions regarding Plaintiff's physical limitations.  Because the ALJ failed to incorporate all of the physical limitations opined by Dr. Landry into the RFC, he necessarily discounted those opinions despite his clear statement to the contrary.  Furthermore, because the ALJ failed to explain why he discounted the physical limitation opinions, the undersigned is constrained to recommend a finding that the ALJ's decision to discount Dr. Landry's opinions is not supported by substantial evidence.  The undersigned notes that this recommendation relates only to the physical limitation opinions and that the ALJ offered several sound reasons for discounting Dr. Landry's opinions as to Plaintiff's pain.

### 2.     Hypothetical Presented to the VE

Plaintiff also argues that the first hypothetical to the VE, which the ALJ relied on to support a finding of non-disability, was deficient because it failed to properly include the physical limitations assessed by Dr. Landry.  [Entry #12 at 28].  Implicit in Plaintiff's argument is a challenge to the RFC determination.  The Commissioner contends that the ALJ properly discounted Dr. Landry's opinions and that it was therefore reasonable for him not to include all of the physical limitations in the hypothetical.  [Entry #13 at 17–

18].  In light of the recommendation regarding Dr. Landry's opinions, the undersigned also recommends a finding that the RFC assessed by the ALJ and the hypothetical presented to the VE were not supported by substantial evidence.

### 3.    Remaining Allegations of Error

In light of the foregoing recommendations related to the ALJ's treatment of Dr. Landry's opinion, Plaintiff's remaining allegations of error are not addressed.  However, on remand, the undersigned recommends directing the ALJ to complete a credibility analysis that is in compliance with the applicable regulations and adequately addresses Plaintiff's concerns related to the reasons originally offered by the ALJ for discounting Plaintiff's credibility.[5]  The undersigned further recommends that the ALJ be directed to be mindful that he is not permitted to substitute his lay opinion about the meaning of medical evidence (such as MRIs) for the professional opinion of the treating physician. *See Wilson v. Heckler*, 743 F.2d 218, 221 (4th Cir. 1984).  The undersigned notes that, pursuant to SSR 12-2p, fibromyalgia may be diagnosed either by using the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia[6] or the 2010 ACR Preliminary Diagnostic Criteria.[7]  No such diagnosis is

---

[5] Plaintiff is advised that, pursuant to SSR 96-7p, it is appropriate and reasonable for an ALJ to consider a claimant's ADLs in assessing the claimant's credibility and subjective pain complaints.  The undersigned notes that the ADLs identified in the ALJ's decision were not inconsistent with those identified in the record.

[6] Those criteria are a history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months; at least 11 positive tender points on physical examination and the positive tender points must be found bilaterally (on the left and right sides of the body) and both above and below the waist; and evidence that other

contained in the record in this case.[8]    Finally, the undersigned notes that the recommendations in this matter are in no way intended to suggest that the ALJ should award benefits on remand.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law.   Based on the foregoing, the court cannot determine that the Commissioner's decision is supported by substantial evidence.   Therefore, the undersigned recommends, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions under sentence four of 42 U.S.C. § 405(g), that this matter be reversed and remanded for further administrative proceedings.

---

disorders that could cause the symptoms or signs were excluded.  SSR 12-2p.
[7] Those criteria are a history of widespread pain; repeated manifestations of six or more fibromyalgia symptoms, signs, or cooccurring conditions, especially manifestations of fatigue, cognitive or memory problems (''fibro fog''), waking unrefreshed, depression, anxiety, disorder, or irritable bowel syndrome; and evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded.  SSR 12-2p.
[8] Neither party's briefs provide a detailed medical history for Plaintiff.  However, the undersigned has thoroughly reviewed the record and summarized Plaintiff's medical history as set forth above.  In completing this review, particularly of Dr. Landry's records, it is apparent that Dr. Landry's diagnosis of fibromyalgia was not based on the criteria set forth in SSR 12-2p.  On February 18, 2010, after Plaintiff stated that he had "been entertaining the possibility of fibromyalgia" to explain some generalized achiness that he was experiencing, Dr. Landry diagnosed possible fibromyalgia and prescribed Savella.    Tr. at 294.    Although Dr. Landry sometimes included a diagnosis of fibromyalgia thereafter and continued prescribing Savella, she never referenced any physical examinations or findings in support of a diagnosis of fibromyalgia.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

November 15, 2013                           Shiva V. Hodges
Columbia, South Carolina                    United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see*  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).